FOR PUBLICATION

| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-2(c)** | Case No. 22-12663 (MBK) |
|---|---|
| In re:<br><br>Yvette Alejandro,<br><br>　　　　　　　　　　Debtor. | Chapter 13<br><br>Hearing Date: July 12, 2022<br><br>Judge: Michael B. Kaplan |

## MEMORANDUM OPINION

| **John M. McDonnell, Esq.** | **Joseph M. Casello, Esq.** |
|---|---|
| McDonnell Crowley, LLC | Collins, Vella & Casello, LLC |
| 115 Maple Avenue | 2317 Highway 34, Suite 1A |
| Red Bank, NJ 07701 | Manasquan, NJ 08736 |
| *Counsel for Debtor* | *Counsel for Cedar Glen Lakes, Inc.* |

This matter comes before the Court on a motion ("Motion") (ECF No. 13) filed by Cedar Glen Lakes, Inc. ("Cedar Glen"), seeking relief from the automatic stay to proceed with removal proceedings in the state court. Yvette Alejandro ("Debtor") opposes the Motion. The Court has fully considered the submissions of the parties and the arguments set forth on the record July 12, 2022 hearing. For the reasons set forth below, the Court GRANTS the Motion.

### I. Background

Cedar Glen is a housing cooperative under New Jersey law. Prior to filing for bankruptcy, Debtor was a member of the cooperative and a shareholder in Cedar Glen—specifically, she was the record owner of the stock and/or membership certificate and occupancy agreement ("Occupancy Agreement") for a unit known as 6A Kentucky Way in Whiting, New Jersey (the

1

"Property"). At some point in 2019, the Debtor's daughter, boyfriend, and three children moved into the Property with Debtor.[1] Cedar Glen notified Debtor that she was in violation of her Occupancy Agreement by having her family live with her and Cedar Glen instructed that they must vacate the Property. After being made aware of the circumstances surrounding Debtor's family's living situation, the Board of Directors of Cedar Glen (the "Board") allowed a grace period of five weeks before requiring the family to vacate the unit. *See Oct. 28, 2019 Letter — Exhibit C to Debtor's Br. In Opp'n* 14, ECF No. 19-1. When the family did not move out by the December 3, 2019 deadline, the Board began imposing daily fines. After several months, the Board increased the daily fine. *See March 10, 2020 Letter — Exhibit D to Debtor's Br. In Opp'n* 16, ECF No. 19-1. The family did not leave the apartment until approximately July 2020. By that time, Debtor had racked up tens of thousands of dollars in fines, which went unpaid. Consistent with the Occupancy Agreement, the Board provided notice before taking enforcement action and provided Debtor with an opportunity to pay all sums due. *See Resolution — Exhibit B to Cert. in Support of Motion* 15, ECF No. 13-1 (stating that Debtor was given "appropriate violation notice . . . pursuant to the By-Laws and Occupancy Agreement . . . via Certified Mail and Regular Mail"). Debtor did not pay the fines. Accordingly, the Board issued a resolution (the "Resolution") cancelling her shares in the association on November 30, 2020.

Cedar Glen then filed a complaint in state court, seeking to convert its assessment into a judgment and extinguish the Debtor's remaining rights. The state court issued a final judgment

---

[1] Debtor states that her daughter's family moved in with her in 2019 "[d]ue to the COVID-19 Pandemic." *See Debtor's Br. In Opp'n* 3, ECF No. 19. However, the COVID-19 Pandemic did not begin in the United States until 2020. Regardless, the precise reasons why Debtor's daughter's and her family came to live in the Property are immaterial to the legal discussion and ultimate determination of this issue.

against the Debtor on November 19, 2021 ("Superior Court Judgment"), in the amount of $34,159, plus attorney's fees and costs in the amount of $18,682.  In January 2022, the state court issued a Writ of Possession requiring Debtor to vacate the Property by April 7, 2022.  On April 1, 2022—days before the Writ of Possession deadline—the Debtor filed for bankruptcy under Chapter 13.  Cedar Glen then filed the instant Motion and requests stay relief so that it can pursue its rights under applicable state law with respect to the Property.

## II.    Discussion

Cedar Glen's position is straightforward.  It contends that Debtor's interest in her shares were cancelled when the Board issued its Resolution in November, 2020.  Moreover, under the Occupancy Agreement, shareholders expressly waive any and all rights of redemption.  Therefore, Cedar Glen asserts that at the time she filed her bankruptcy in April, 2021, the Debtor did not retain any rights either under the Occupancy Agreement or as a shareholder.  In opposition, Debtor argues that the provision of the Occupancy Agreement which waives the right of redemption is void as being contrary to public policy.  Debtor also asserts that her stock interests in the cooperative were not extinguished pursuant to the November 19, 2021 Judgement and can be treated through the bankruptcy plan.

The outcome of this case turns on whether, at the time she filed for bankruptcy, the Debtor had any interests or rights in the cooperative corporation.  The Court begins with a general overview of the nature of a shareholder's interest in a cooperative corporation.

3

### A. Cooperative Corporations in New Jersey

New Jersey state courts have explained that "a cooperative apartment association is a unique form of property ownership which does not fit into common law classifications." *Plaza Rd. Co-op., Inc. v. Finn*, 201 N.J. Super. 174, 180, 492 A.2d 1072, 1077 (App. Div. 1985). "Legal title to the real and personal property of a cooperative complex or project is vested in a cooperative corporation, and individuals purchase shares of stock enabling them to occupy a dwelling within the cooperative project under a proprietary lease." *Presten v. Sailer*, 225 N.J. Super. 178, 184–85, 542 A.2d 7, 10 (App. Div. 1988) (citations and footnotes omitted). Accordingly, a member of a cooperative has two different interests: (1) a personalty interest in the shares of stock that the member holds in the corporation; and (2) a realty interest in the proprietary lease or occupancy agreement. *See In re Robertson*, 147 B.R. 358 (Bankr. D.N.J. 1992). New Jersey state courts have explained that

> These two property interests are intertwined, and the possession of one without the other is virtually worthless. In fact, the two interests are inseparable. A proprietary lease does not by itself create a possessory right to a cooperative apartment, but rather sets forth the rules by which an occupant must abide. Likewise, the mere ownership of shares in a cooperative association does not grant the shareholder possession of a cooperative apartment.

*Id.* at 368.

### B. Debtor's Interest in Cedar Glen

When Debtor purchased her shares in the Cedar Glen Cooperative and signed the Occupancy Agreement, she became vested with essentially the same pair of property interests detailed in the *Robertson* case; namely: (1) a property interest in the form of her right to retain her shares in the cooperative corporation; and (2) a realty interest in the form of her right to occupy

the unit dictated by the Occupancy Agreement. *See McDaniel v. Metropolis Towers Apartment Corp.*, No. 01-CIV-4138(WGB), 2002 WL 1065874, at *5 (D.N.J. Feb. 26, 2002). Therefore, in considering Cedar Glen's Motion—i.e., in deciding whether to lift the stay—this Court must consider *both* the Debtor's property and realty interests. *See id.*

Debtor concedes that her *realty* interest—her right to occupy the unit under the Occupancy Agreement—was terminated prepetition by virtue of the Superior Court Judgment, dated November 19, 2021. *See Debtor's Br. In Opp'n* 7, ECF No. 19 ("Here, as in *Robertson*, Debtor's rights under the Occupancy Agreement were terminated by the Superior Court Judgment . . . ."). However, Debtor maintains that her *property* interests persist because her rights to her "shares of the cooperative were not terminated, cancelled or transferred by way of the Superior Court Judgment." *Id.* In contrast, Cedar Glen asserts that Debtor's shares were cancelled in November, 2020 by virtue of the Resolution. For the reasons that follow, the Court agrees with Cedar Glen.

1. **Debtor's Property Interest in the Shares of Cedar Glen**

In Debtor's opposition, she directs the Court's attention to the Superior Court Judgment, which Debtor contends did not terminate her shareholder interest, or award title, or otherwise authorize Cedar Glen to cancel, reissue, rename, or transfer Debtor's shares. However, Debtor's argument misses the point, and she improperly focuses on the Superior Court Judgment. The controlling document on the issue of Debtor's shares is the Resolution. Indeed, the Resolution states that "the Stock Certificate belonging to [Debtor] . . . shall be and hereby is revoked." And, "the Stock Certificate of [Debtor] shall be and hereby is cancelled, and any and all rights and privileges appurtenant thereto shall be and hereby are terminated." *Resolution — Exhibit B to Cert.*

*in Support of Motion* 15, ECF No. 13-1.  Under the Occupancy Agreement, Cedar Glen had specific authority to so cancel Debtor's shares in the event of default.

> In the event a Member is determined to be in default of this Occupancy Agreement as provided in Article 15 hereof, the Corporation may, after 30 days prior written notice to the Member or his legal representative, *declare the share of corporate stock held by the Member to be void and terminate this Occupancy Agreement*, the corporation shall proceed to offer to sell the stock as provided in paragraph (E) [sic] of this Article.

*Occupancy Agreement, Article 12(E) — Exhibit A to Cert. in Support of Motion* 9, ECF No. 13-1 (emphasis added).  The state court had no reason to direct the termination of Debtor's shareholder interest, award title, or authorize Cedar Glen to cancel, reissue, or transfer Debtor's other shares; undisputedly, the Resolution had done so prior to the state court action.

Cedar Glen submits—and Debtor does not dispute—that Debtor was in default.  As a result, the Board enforced the terms of the parties' agreement and afforded Debtor appropriate notice and an opportunity to cure her default before ultimately revoking her shares.  Again, the Debtor's argument that the Superior Court Judgment did not "independently cancel [her] shares of stock in favor of Cedar Glen" misses the mark.  Debtor's shares were already cancelled, revoked, or otherwise declared void by virtue of the Resolution dated November 30, 2020.  Debtor's *property* interest in the cooperative terminated as of that date and Debtor held no such interest on the date of the bankruptcy filing.

Debtor's reliance on *In re Robertson* is unavailing.  *See In re Robertson*, 147 B.R. 358. Like Debtor in the instant case, the debtor in *Robertson* owned shares in a cooperative (a property interest) and had a right to possession of a unit (a realty interest) pursuant to a proprietary lease agreement.  And, like Debtor in the instant case, the debtor in *Robertson* defaulted under the terms

of the proprietary lease agreement. That is where the similarities end. Upon the debtor's default in *Robertson*, the cooperative instituted an action in state court, seeking a judgment for unpaid rent and possession of the unit. There is no indication in the court's opinion that the cooperative in *Robertson* ever took action to cancel the debtor's shares under a mechanism outlined in the proprietary lease agreement.

After the cooperative in *Robertson* obtained a judgment and writ of possession from the state court, the debtor filed her bankruptcy petition. The cooperative sought stay relief to proceed with removal and to collect its judgment. On those facts, the bankruptcy court denied the request for stay relief. In doing so, the bankruptcy court provided a lengthy discussion on the unique form of ownership that accompanies stock in a cooperative corporation and acknowledged the dearth of case law available on the subject. The bankruptcy court concluded that "[t]he Debtor's rights to her shares of stock as personal property cannot be extinguished by a state court action for possession or for ejectment," and implied that the shares must be independently terminated. *Id.* at 368; *see also McDaniel*, 2002 WL 1065874, at *4, *5 (interpreting *In re Robertson* to mean that mere cancellation of a proprietary lease was insufficient, and "some sort of independent proceeding" was required to cancel the shares of the cooperative). The cooperative in *Robertson* undertook no such independent proceeding, and simply filed a state court action for ejectment or possession. This singular enforcement effort, said the bankruptcy court, was insufficient to cancel the debtor's shares of stock.

Pointedly, although the cooperative in *Robertson* had invoked provisions of the proprietary lease upon the debtor's default, such provisions did not effectively cancel the debtor's shares.

7

Specifically, the proprietary lease provided for the voluntary "surrender" of the debtor's shares upon termination of the lease and, "if the shares are not so surrendered, new shares may be issued . . . ." *In re Robertson*, 147 B.R. at 368. The proprietary lease further established that "the Debtor's stock certificate would not be cancelled until the issuance of a new proprietary lease and a new stock certificate." *Id.* Because "the [d]ebtor did not surrender the shares and the association had not yet issued new shares," the *Robertson* court held that "as of the petition date, the Debtor's shares of stock had not been cancelled" and the debtor still had an interest in her shares of stock at the time she filed for bankruptcy. Here, in contrast, Cedar Glen *did* independently terminate Debtor's shares by issuing the November 2020 Resolution and cancelling Debtor's shares under the terms of the Occupancy Agreement.

The Debtor has not cited any authority, and this Court has found none, identifying additional legal or procedural steps—beyond what is stated in the Occupancy Agreement—required to cancel cooperative shares. Thus, unlike the circumstances in *Robertson*, Debtor's interest in her shares of the cooperative were terminated prior to the bankruptcy filing. In this way, the instant case is more akin to the circumstances in *McDaniel*, in which the court determined that all of the debtor's rights had been extinguished prior to his bankruptcy filing. *McDaniel*, 2002 WL 1065874, at *5 ("[B]oth McDaniel's property interest and his realty interest in the property had been terminated prepetition in accordance with the law of the State of New Jersey."). Accordingly, this Court holds that both Debtor's *realty* interest and *property* interest were terminated prepetition. Because she retained no rights under the Occupancy Agreement or as a shareholder,

8

cause exists under 11 U.S.C. § 362(d)(1) to grant relief from the automatic stay so that Cedar Glen may enforce its Writ of Possession.

### C. Policy Considerations

Debtor contends that the provision of the Occupancy Agreement which waives Debtor's right of redemption is void as contrary to public policy. Specifically, Debtor insists that her interest in the cooperative is properly characterized as a realty interest, which carries with it certain protections under New Jersey law. Debtor relies on *Presten v. Sailer*, 225 N.J. Super. 178, 542 A.2d 7, 10 (App. Div. 1988) to support her contention. However, the court in *Presten* considered the specific issue of "whether the ownership of shares in a cooperative constitutes holding an 'interest in' or 'concerning' real estate *so as to bring it within the ambit of the statute of frauds relating to realty*." *Id.* at 185 (emphasis added). The issues in the case presently before the Court do not involve the statute of frauds. Instead, Debtor asks this Court to characterize the nature of an interest in a cooperative as real estate *for purposes of invoking an equitable right of redemption*. The Court declines to do so.

In a typical mortgage context, "a mortgagor has an absolute right [under New Jersey law] to redeem the property by tendering the full amount due on the mortgage." *Brookshire Equities, LLC v. Montaquiza*, 346 N.J. Super. 310, 315, 787 A.2d 942 (App. Div. 2002) (citing *Hardyston Nat'l Bank v. Tartamella*, 56 N.J. 508, 513, 267 A.2d 495 (1970)). This right does not arise from statute and, instead, was "created and devised by equity to protect a mortgagor from the forfeiture of his title." *Borough of Merchantville v. Malik & Son, LLC*, 218 N.J. 556, 568, 95 A.3d 709, 716 (2014) (quoting *Lobsenz v. Micucci Holdings, Inc.,* 127 *N.J.Super.* 50, 52, 316 *A.*2d 59 (App. Div.

9

1974). The Supreme Court of New Jersey has held that the right of redemption is so important that it cannot be waived in a mortgage instrument. *See Customers Bank v. Reitnour Inv. Properties, LP*, 453 N.J. Super. 338, 357, 181 A.3d 1038, 1050 (App. Div. 2018) (citing *Borough of Merchantville*, 218 N.J. at 568). If the period for redemption has not expired at the time the petition is filed, then a debtor's right of redemption becomes property of the estate. *See* 11 U.S.C. § 108(b); *State Bank of Hardinsburg v. Brown*, 317 U.S. 135, 138, 63 S. Ct. 128, 130, 87 L. Ed. 140 (1942); *In re Mocco*, 176 B.R. 335, 346 (Bankr. D.N.J. 1995) (citing 4 COLLIER ON BANKRUPTCY, § 541.07(8) (15th Ed. 1980) (citations omitted)); 7 NORTON BANKR. L. & PRAC. 3d § 147:11 (Rights of redemption). Debtor implies that she not only possesses a right of redemption with respect to her shares of ownership in the cooperative corporation, but that her right is likewise so important that it cannot be waived in the Occupancy Agreement. Again, the Court disagrees.

New Jersey law does not afford any statutory right to redemption of shares in a cooperative corporation. Debtor does not cite any case law establishing that an un-waivable, equitable right of redemption applies to an ownership interest in shares of a cooperative corporation. Significantly, several New Jersey cases cited by Debtor mention a right of redemption waiver provision in the proprietary lease agreement accompanying cooperative corporation shares—yet those courts do not declare the waiver provisions void. *See, e.g. In re Robertson*, 147 B.R. at 364; *Plaza Rd. Co-op., Inc.*, 201 N.J. Super. at 178.

The Court has found no controlling case law and—from the Court's review of the few cases on point—it appears that courts across the country are split on the issue. *Compare Kadera v. Superior Ct. In & For Cnty. of Maricopa*, 187 Ariz. 557, 566, 931 P.2d 1067, 1076 (Ct. App. 1996)

(holding that shareholders in cooperative corporation could not be compelled to waive their right of redemption); *with Rolling Meadows Coop., Inc. v. MacAtee*, 904 N.W.2d 920 (Minn. Ct. App. 2017) (holding that member of nonprofit cooperative corporation had no contractual right of redemption under statutes regulating cooperatives); *Cunningham v. Georgetown Homes, Inc.*, 708 N.E.2d 623, 626 (Ind. Ct. App. 1999) (discussing the "unique . . . nature of cooperative living" and acknowledging that waiver of right to redemption in the occupancy agreement was enforceable). Ultimately, this Court agrees with the line of cases holding that parties may consent to a waiver of redemption rights in a contract involving shares of ownership in a cooperative corporation. In reaching this conclusion, the Court relies on persuasive case law and the unique nature of the ownership interests involved.

  First, the Court acknowledges that New Jersey's rule against waiver of the right of redemption precludes the inclusion of such a waiver provision in a mortgage instrument or in a contemporaneous agreement. *See, e.g. Customers Bank*, 453 N.J. Super. at 181. Courts have extended this rule "not simply to traditional mortgage structures but to all transactions where the parties intend that real property be the security for the transaction." *U.S. Land Res., LP v. JDI Realty LLC*, No. 08-5162, 2009 WL 2488316, at *10 (D.N.J. Aug. 12, 2009) (citing *Rutherford National Bank v. H.R. Bogle & Co.,* 114 N.J. Eq. 571, 574, 169 A. 180 (Ch. 1933)). However, the purchase of shares in a cooperative corporation and the execution of a proprietary lease agreement do not implicate a mortgage instrument and the real estate does not serve as security for the transaction. Debtor's relationship to the cooperative is not in the nature of a borrower-lender;

rather, it is founded upon contract, with each shareholder's rights and responsibilities clearly outlined.

Further, a deep dive into the origins and purpose of the rule protecting the equity of redemption reveals that it is based upon the character of a mortgage and the relationship between a debtor and creditor. *See, e.g.*, *Peugh v. Davis*, 96 U.S. 332, 337, 24 L. Ed. 775 (1877) ("It is also an established doctrine that an equity of redemption is inseparably connected with a mortgage; that is to say, so long as the instrument is one of security, the borrower has in a court of equity a right to redeem the property upon payment of the loan."); *Humble Oil & Ref. Co. v. Doerr*, 123 N.J. Super. 530, 547, 303 A.2d 898, 907 (Ch. Div. 1973) (quoting 4 POMEROY, EQUITY JURISPRUDENCE (5th ed. 1941), § 1193 at 568 *et seq*.) ("This doctrine is based upon the relative situation of the debtor and the creditor; it recognizes the fact that the creditor necessarily has a power over his debtor which may be exercised inequitably . . . ."). The equitable right of redemption was devised to protect a mortgagor from the forfeiture of his or her title. *See, e.g.*, *Hardyston*, 56 N.J. at 513. But in a cooperative ownership, "legal title to the real property of the housing development is in a cooperative entity." *Davis v. Howell Mgmt. Co.*, No. A-3147-08T3, 2009 WL 4251170, at *3 (N.J. Super. Ct. App. Div. Nov. 19, 2009) (citing *Presten v. Sailer*, 225 N.J. Super. 178, 184-85, 542 A.2d 7 (App. Div. 1988)).

There are significant differences between a mortgagor/mortgagee relationship and the cooperative/shareholder structure, and the Court is persuaded by the cases that have recognized these differences. The cooperative context simply does not involve the same relationship or the

12

same imbalance of power between borrower and lender that gives rise to the doctrine of equity of redemption in the mortgage context.

Instead, New Jersey courts have recognized that cooperatives and their shareholders have significant latitude to craft their relationship and determine their respective responsibilities and obligations. *See, e.g.*, *Sulcov v. 2100 Linwood Owners, Inc.*, 303 N.J. Super. 13, 30, 696 A.2d 31, 39 (App. Div. 1997) (holding that "the relationship between a cooperative and its shareholders should be determined by its Certificate, by-laws, and proprietary lease and that the documents must be read together"); *Plaza Rd. Co-op., Inc.*, 201 N.J. Super. at 181 (App. Div. 1985) ("The rights and obligations of the parties are limited only by their ingenuity in defining their relationship."). This aspect of a cooperative ownership arrangement suggests that parties can contractually waive any right to redemption.

Additionally, the Court must weigh Debtor's public policy argument favoring a right of redemption against other policy considerations. Indeed, the Supreme Court of New Jersey has stated that a mortgagor should retain the right to redeem "unless some public interest would be significantly offended." *Hardyston Nat. Bank of Hamburg, N. J. v. Tartamella*, 56 N.J. 508, 513, 267 A.2d 495, 498 (1970). Here, the Court considers the unique nature of cooperative living and the interests of the cooperative community, in general. The Occupancy Agreement to which the Debtor agreed sets forth the members' rights as well as the rules and conditions of the community. "Because each member of a cooperative pays a portion of the entire cost of maintaining the cooperative community, the whole community necessarily suffers when one member does not make her monthly payments." *Cunningham v. Georgetown Homes, Inc.*, 708 N.E.2d 623,

13

625 (Ind. Ct. App. 1999); *see also In re Robertson*, 147 B.R. at 365. The cooperative community similarly suffers when a member chooses to violate other terms of the Occupancy Agreement, as Debtor did in the instant case. Given the significant public interests that would be offended by rewarding a cooperative shareholder, who had violated her contractual obligations, with an equitable right of redemption, the Court declines to extend this right to cancellation of shares in a cooperative corporation under the applicable governing documents.[2]

### D. Expiration of Redemption Period

Finally, the Court holds that—even if a right to redeem existed—too much time has elapsed under the facts of the instant case for Debtor to now exercise said right. In New Jersey, a mortgagor may redeem within a ten-day period. *See Hardyston*, 56 N.J. 508. Here, the critical date is November 30, 2020, the date the Board issued its Resolution, which was approximately 20 months ago. Alternatively, Debtor pegs the termination date of her realty interest as November 19, 2021, the date of the Superior Court Judgment, which was over 10 months ago. *See Debtor's Br. In Opp'n* 7, ECF No. 19. Clearly, the Debtor failed to redeem within ten days of those events. Even using the April 1, 2022 petition date as the operative date, the Code provides that the equitable redemption period can be extended, at most, for another 60 days—or until June 1, 2022. *See* 11 U.S.C. § 108(b). Debtor did not redeem her interest in the shares by that date. In sum, the period for redemption cannot be open-ended. To the extent Debtor held such a right, she failed to exercise that option.

---

[2] To be clear, the Court's refusal today to apply the doctrine barring impairment of the equitable right of redemption should not be viewed as an absolute bar. The doctrine may well apply in situations where a cooperative shareholder has pledged her shares as security for a loan, as part of a mortgage transaction, and the lender seeks to foreclose on the shares. This is not the factual circumstances present in this matter.

### III. Conclusion

For the reasons discussed, the Court grants stay relief to Cedar Glen. The Court will enter the proposed form of order submitted with Cedar Glen's Motion.

_Michael B. Kaplan_
Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Dated: August 3, 2022